IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DWAYNE HASKINS**

      **Petitioner,**

v.                                 **CIVIL ACTION NO. 1:07cv39**
                                         **(Judge Keeley)**

**WARDEN GUITERREZ,**

      **Respondent.**

## REPORT AND RECOMMENDATION
## 28 U.S.C. § 2241

### I.  Procedural History

On March 15, 2007, Dwayne Haskins [hereinafter referred to as "petitioner"], a federal prisoner, filed a *pro se* petition under the provisions of 28 U.S.C. §2241challenging his sentence computation and arguing that he should have been released to a CCC on December 2, 2006.  On April 9, 2007, the petitioner paid the required $5.00 filing fee.  On April 10, 2007, the undersigned made a preliminary review of the file and determined that summary dismissal was not warranted at that time.  Consequently, the respondent was directed to respond to the petition and did so by filing a Motion to Dismiss and Memorandum in support thereof on  April 18, 2007.  On April 19, 2007,  a <u>Roseboro</u> Notice was issued, and  the petitioner filed a reply to respondent's Motion to Dismiss on April 26, 2007.

This matter, which  is before the undersigned  for a  Report and Recommendation pursuant to LR PL P 83.09, is ripe for review.

### II.  Issues Presented

**A.  The Petition**

Petitioner alleges that the respondent has held him in prison beyond the time period required for his placement in a Community Correction Center (CCC). More specifically, he alleges that the Bureau of Prisons (BOP) has incorrectly calculated his full term release date and projected release date to a time beyond the 85% term of imprisonment required by BOP policy 5100.08. Therefore, the petitioner argues that the respondent has kept him in custody beyond the period of his release date to a CCC without explanation and in violation of BOP policies and rules. As well, the petitioner alleges that if he were released to a CCC or home confinement, he would be able to find employment to help his family which is struggling financially. Accordingly, the petitioner requests that the court order the respondent to recalculate his sentence and have him transferred to a CCC or home confinement.

B.  **Motion to Dismiss**

In Support of his Motion to Dismiss, the respondent argues that the petitioner's sentence has been correctly calculated. More specifically, the respondent argues that the 85% language to which the petitioner refers is a guideline, but is not how good conduct time (GCT) is calculated. The respondent argues that the petitioner's sentence was properly calculated with regard to CGT as dictated by 18 U.S.C. § 3624(b) and 28 C.F.R. § 523.20. As well, the respondent argues that the financial well-being of a prisoner's family is not among the factors that BOP staff consider for CCC placement. Finally, the respondent argues that the petitioner has failed to exhaust his administrative remedies, and is therefore barred from bringing this habeas petition challenging the duration of his confinement.

C.  **Petitioner's Reply to the Motion to Dismiss**

In his reply to the Motion to Dismiss, the petitioner notes that he was given a confirmed date of May 4, 2007 for transfer to a CCC. However, the respondent's memorandum includes an

exhibit which indicates that his referral is in fact twenty-one days later, or May 25, 2007. (Dckt. 9-3, p. 23) Therefore, the petitioner argues the respondent's response contains an inaccurate date, and the court should deem it "meritless with respect the petitioner's transfer date to a halfway house." Accordingly, the petitioner requests that this court order the BOP to honor its commitment date of May 4, 2007 and further order the BOP to transfer him to a CCC on May 4, 2007.

### III. Standard of Review

In ruling on a motion to dismiss, the Court must accept as true all well-pleaded factual allegations. Walker v. True, 399 F.w3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Additionally, a district court should construe *pro se* petitions liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978).

### IV. Discussion

Unlike many of the recent habeas corpus petitions which this court has received from inmates at FCI Morgantown, this petitioner is not challenging the BOP's policy of transferring prisoners to a CCC for a maximum of the last 10% of their term of imprisonment. Rather, the petitioner is arguing that the BOP miscalculated his term of incarceration, and therefore, has kept him incarcerated longer than mandated. His request for placement in a CCC is simply an extension of his argument that he should have been released already.

There is no dispute that on February 1, 2006, the United States District Court for the Northern District of Indiana sentenced petitioner to an eighteen (18) month sentence, to be followed by a two-year term of supervised release for Knowingly Selling a Firearm to a Felon in violation of 18 U.S.C. § 922(d)(1). (Dckt. 9-3, pp. 9-12) Nor is there a dispute that the petitioner began is incarceration on February 1, 2006. The dispute centers on how the BOP calculates when a prisoner has completed his term of incarceration.

The petitioner points to Program Statement 5100.08 and argues that a prisoner is only expected to serve 85% of his sentence. The petitioner than sets forth his calculation that 15% of eighteen months is 15.3 months. The petitioner continues his calculation by rounding to the nearest whole month and arriving at the conclusion that his sentence expires on May 1, 2007. Therefore, the petitioner argues that under the six month rule of CCC placement, he should have been sent to a CCC program on November 1, 2007. Therefore, the petitioner argues that as of February 21, 2007, the date he prepared his petition, he had remained in prison for more than four month past the time he should have been placed in a CCC.

The petitioner's calculation of his term of incarceration is, however, inaccurate. Title 18 U.S.C. § 3624(b) which authorizes the BOP to award GCT provides as follows:

> (1) A prisoner...who is serving a term of imprisonment of more than one year, shall receive credit towards the service of the prisoner's sentence, beyond the time served, of fifty-four days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, **unless the Bureau of Prisons determines that, during that year, he has not satisfactorily complied with such institutional disciplinary regulations as have been approved by the Attorney General and issued to the prisoner**.... The Bureau's determination shall be made within fifteen days after the end of each year of the sentence. **Credit for the last year or proration of a year of that term of imprisonment shall be prorated** and credited within the last six weeks of the sentence.

(emphasis added)

Petitioner was designated to FCI Morgantown on March 21, 2006. (Dckt. 9-3, p. 6) On April 13, 2006, he received an incident report for a Code 316 violation. He had a hearing before the Disciplinary Hearing Officer (DHO) on May 10, 2006, and was found to have committed the prohibited act and was sanctioned. The sanction included the loss of 13 days of Good Conduct Time (GCT). (Dckt. 9-3, p. 15).

On April 19, 2006, petitioner received another incident report for a Code 317 violation. This incident was also heard by the DHO on May 10, 2006, and again, the petitioner was found to have committed the prohibited act and the sanctions imposed included the loss of an additional 13 days GCT. (Id.)

On June 6, 2006, petitioner received a third incident report for a Code 316 violation. His DHO hearing was held on June 14, 2006, and his sanctions included the loss of yet another 13 days of GCT. (Id.).

At the end of the first year of his sentence, petitioner would have been entitled to 54 days total GCT. See 18 U.S.C. § 3624(b). However because of the sanctions for misconduct which included the loss of 39 days GCT, petitioner only received 15 days GCT. (Dckt. 9-3, p. 17) Pursuant to Section 3624(b), GCT is prorated during the final year of the sentence. Because petitioner will not serve an entire second year of imprisonment, his projected GCT has been prorated. He is expected to earn 21 days GCT, assuming no further sanctions. (Id.) The Bureau of Prisons projects that petitioner will receive 15 days GCT for his first year, and a prorated amount of 21 days GCT for the remaining portion of his sentence for a total of 36 days GCT. Subtracted from a full release date of July 29, 2007, the Bureau of Prisons has projected that petitioner's release date will be June 23, 2007, assuming clear conduct. (Id.)

5

Therefore, petitioner's calculation that his sentence expires on May 1, 2007 is clearly incorrect. Accordingly, the petitioner's argument that he has been held in custody beyond his release date is also incorrect.

With respect to the plaintiff's request that he be sent to a halfway house or home confinement, the record reflects that the petitioner met with his unit team on July 25, 2006 to receive his progress review. Staff noted that he had maintained work evaluations ratings ranging from poor to average. In addition, staff noted that he had chosen not to participate in educational programs and had chosen not to participate in the Residential Dug Addiction Program. As well, reference was made to his disciplinary sanctions. (Dckt. 9-3, pp. 19-21). On August 18, 2006, staff made a CCC referral with a recommended date of May 25, 2007. However, on February 21, 2007, the petitioner's pre-release date was designated as May 4, 2007. (Dckt. 1-2, p. 1). As noted above, the petitioner is now asking the Court to order the BOP to honor that date and transfer him to a CCC.

The undersigned notes that even if the petitioner's writ of habeas corpus was granted, such action does not entitle him to an Order from this Court directing that he be immediately transferred to a CCC. At best, the granting of the writ would only entitle the petitioner to have his CCC placement considered in accordance with the five factors set forth in § 3621(b). Furthermore, although the petitioner has failed to notify the court of his change of address, the BOP website establishes that the plaintiff is at a CCC under the Community Corrections Management Office in Detroit Michigan.[1] Therefore the petitioner has been granted the relief he requested, and his petition is moot.

---

[1] See the Inmate Locator tool at the bop.gov website.

## V. Recommendation

Based on the foregoing, it is recommended that the respondent's motion to dismiss (Dckt. 9) be **GRANTED** and the petition (dckt. 1) be **DISMISSED** as moot.

Any party may file, within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgement of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984)

The Clerk of the Court is directed to mail a copy of this Recommendation to the petitioner and counsel for the respondent.

Dated: May 29, 2007

/s/ James E. Seibert
**JAMES E. SEIBERT**
**UNITED STATES MAGISTRATE JUDGE**